Please be seated. Welcome to the United States Fifth Circuit Court of Appeals. We, for the past two days, we've been sitting with Judge Jolly, and now we have the privilege of being joined by Judge Davis. And today we will hear, let's see, we will hear three cases, two of them in person and one by video argument. And I will call the first case, and that is number 1960408, Sergio Tabora Gutierrez v. Merrick Garland. I know we have two attorneys for Mr. Gutierrez, and then the government attorney is on the phone. So, Mr. Mace, you have seven minutes and you have reserved some rebuttal time. My name is Frank Mace, and I'm joined by my colleague N'Shea Bond. We represent Petitioner Sergio Luis Tabora Gutierrez. I will address the first issue regarding the Board of Immigration Appeals' failure to apply the proper standard of review. You may want to speak up just a little bit since we have these screens in front of us. Okay, Garland. Go ahead. My colleague will address the second issue regarding why, even if the BIA applied the correct standard of review, the BIA's holding was impermissibly contradicted by the evidence. The first issue is no longer really in dispute. Following the close of briefing in this case, the Attorney General issued matter of RAF, which adopts Mr. Gutierrez's position as to the proper standard of review that the BIA must apply to the IJ's ruling. How do you get around our opinion in Avalar, Bolivia, where we said that to preserve the error on the standard of review, you've got to, if necessary, after you find out the standard the BIA used, file a motion for reconsideration? I don't think Petitioner did that, did he? No, Your Honor. Petitioner did not file a motion for reconsideration, but it was not necessary in this case. How did he get around that case? In this case, Petitioner stated the appropriate standard of review in his brief to the BIA. On page two of his brief to the BIA, Mr. Gutierrez stated that the BIA applies a clearly erroneous standard of review to all factual findings made by an immigration judge, and the BIA reviews all questions of law, discretion, and judgment on all other issues on appeal from decisions of immigration judges de novo. Now, this court has held— Wasn't that the same thing that happened in Bolivia? Avalar? Yes. In Avalar, Oliva, the court held that the allegation of BIA error, if the allegation of BIA error, presents a wholly new ground for relief, arising only as a consequence of some error in the deportation proceedings that the BIA never had a chance to consider, rather than simply disagreement with the BIA's resolution of a previously urged issue. The error must be raised in the first instance before the BIA, either in a motion to reopen or a motion for reconsideration. That didn't happen here. We did not file a motion for reconsideration, but here's the difference, Your Honor. In our case, we told the BIA what the proper standards of review for questions of fact and of law are. The BIA came to a conclusion about how those standards apply, and we contend that they misapplied those standards. We now appeal. In Avalar v. Oliva, the issue was that the BIA injected new legal error that was not there before. What the BIA did in that case was that it relied on a subset of the IJ's factual findings in order to affirm the IJ under clear error. That was a little bit strange, and what this court said was that the petitioner needed to raise that error with the BIA before bringing it to this court. In other words, neither party could have anticipated that error by the BIA. It was new. It was added by the BIA. Whereas in this case, it's a much more traditional progression of error. We presented the proper standards of review to the BIA on page 2 of our brief. The BIA came to a conclusion about how those standards apply to questions of fact and questions of law. We disagree with the BIA's conclusion, and we now appeal. When you say you presented the proper standard to the BIA on page 2 of your brief, I don't have it in front of me, although I can pull it up. Is that just the standard boilerplate language in your brief about clear error versus de novo review of legal issues, or did you specifically target this particular issue, meaning government acquiescence is a legal error that must be a legal issue that must be reviewed de novo? It was more of the form of boilerplate, Your Honor. Well, I mean, did your brief target this issue? The one that you say now the Attorney General has clarified. Our brief did not target the issue, but, Your Honor, presenting the standards of review is sufficient for exhaustion. Huh. Just a boilerplate. I mean, every brief we read has the boilerplate standard of review. And it's always accurate, right? Fact questions, clear error, legal questions de novo. You're saying that's sufficient to preserve this such that you don't have to file a motion for reconsideration? Yes, Your Honor. Okay. In Dale v. Holder, 610 F. 3rd, 294, 5th Circuit, 2010, at page 299, this court said, a petitioner need only make some concrete statement before the BIA to which he could reasonably tie his claims before this court. So long as the petitioner has satisfied this requirement, no motion to reconsider is necessary, despite subsequent variations in the depth of analysis a petitioner gives to an issue or changes in the scope of the argument. And under that standing standard, raising the boilerplate was enough, Your Honor. Let's assume, let's say we agree with you on that. Still, if to the extent that any of the findings in this case are fact findings, such as what happened with the police, why didn't they put such and such in a report, those are still fact findings that we would review for, under the normal standard, right? Yes, Your Honor. This court would review the factual findings for substantial evidence. It's the application of law to the undisputed facts. Yeah, I understand what you're saying. Do you think there's, I mean, is there a current circuit split on this issue from our precedent on how to review acquiescence claims versus third and fourth? Is that what you think the law is right now? There's a current circuit split on the issue? Or are you asking us to sort of create or deepen one? No, Your Honor. The only two circuits to have addressed this issue, the third and the fourth, are in agreement, and we now have the Attorney General joining that agreement. As the government concedes, Your Honor, I see that. You can complete your thought. As the government concedes, this is an issue of first impression in the Fifth Circuit. Okay. And therefore, there's no circuit split between this court and the third and fourth circuits. Okay, you're saying it's an open, you're saying it's an open question in this circuit? Yes, Your Honor. Okay, all right. Let me ask you one question. Please, please. What's your best Fifth Circuit case that we should review acquiescence as a matter, de novo, as a matter of law? I mean, I read Morales as one of our latest cases where our reading is applying clear error to that issue. Do you have a better case? Your Honor, we don't have a better case because, as we posit and the government concedes, this is an issue of first impression in the Fifth Circuit. Morales, Morales was the inverse of this case. Morales, Morales addressed the proper standard review for factual findings. Now, Morales, Morales concluded that the BIA committed legal error by applying the wrong standard to the factual findings. By contrast, in this case, we say the BIA committed legal error by applying the wrong review standard to the legal findings. Okay, which I read that as being, they're discussing the sufficiency of the evidence, which is legal. Sufficiency of the evidence on the fact finding is a legal issue, but that's not the standard of review. The predictive factual findings are a question of fact. The application of the regulatory definition of torture to those factual findings is a question of law. What's your best circuit case, Fifth Circuit case, for saying that? Your Honor, I don't have a specific case, but as a general principle, we believe that application of a standard of law to undisputed facts is a question of law. Thank you, Counsel. You'll have some time for rebuttal. Mr. Bonds. Good morning, Your Honors, and may it please the Court. As my co-counsel just explained, the correct standard of review on the question of state participation in torture under the BIA should be remanded to the BIA to apply the correct standard. But even if that was not the case, the agency's decision must still be vacated and this cause must still be remanded. The Board's decision in this case cannot stand because the uncontroverted factual record compels a contrary conclusion, and that conclusion is this. The Honduran state acquiesced in our client's violent torture at the hands of MS-13 and will continue to do so in the future. I can't even figure out how we know that MS-13 is involved in the offenses against your client. So I'm looking at the police reports for the 2017 shooting, for the 2017 beating, for the 2014 gang encounters, and your client, in talking to the IJ, repeatedly says, well, they're wearing masks, I'm not sure who they are. I went to file a police report. The police said, who was it? I said I didn't know. So it seems like I'm not sure how you can say that the IJ would have been required even to say that it was MS-13, much less that the government was actively acquiescing in MS-13's affairs. Well, Mr. Gutierrez provided some credible evidence and testimony as to the identity of his assailants. So if we begin in 2014, when he returned to Honduras, he was approached by MS-13 gangsters who asked him to pay a war tax and to join in their criminal enterprise, and of course he refused. At that instance, they told him if they saw him again, they would kill him. And they made good on that promise, or at least tried to, because the next time he encountered these people, they attacked him, and as a result, he had to flee to various different principalities throughout Honduras. None of this stuff is disputed by the government. None of those facts are disputed by the IJ or the BIA. Well, I'm just, I'm looking at what he said, and he doesn't say it's the same people. I mean, he could have told the IJ that. He could have said it was the same people who encountered before and said they would kill me, and then this whole thing happened. There's an entire, I'm looking here, it starts at page 168 to 169 of the record on appeal. The question is, who were these people? I don't know. They were wearing masks. Why do you think they were MS-13 tattoos? But nothing that says it was the same tattoo, the same people, the same, that all relates back to some previous threat. Well, he identified them in the 2017, December, September 2017 beating that he received by MS-13. He identified those MS-13 members because they told him that they were. As they were beating him and punching him, kicking him, slashing him with a broken beer bottle, they told him that we're doing this because you didn't want to join the gang. You didn't want to join MS-13. This is four individuals, this is his testimony. Four individuals turned back to me, but I didn't know who they were. I don't know their names. Yes, he didn't know their specific identity, but he did know their affiliation with MS-13 because they told him that the reason they were beating him was that he wasn't willing to join the gang or support their criminal enterprise. It's a reasonable inference for him to make that those people were at the very least affiliated with the people who initially threatened him. So let's just stipulate that that's sufficient. I don't know who they were, but I think they were in MS-13, right? Even though that's not what they said, they just said gang. So let's just, let's go past that. So he goes to file the police report with the Honduran police and the police say, okay, well, who were they? And he says, I have no clue. And so the IJ says, well, I'm not sure what I'm supposed to do with that because you couldn't tell the police, like what are those police supposed to do when you go to file a report and you don't know who it was? Well, it's really two things, Your Honor, because there's multiple instances of our client going to the police. So initially when he went to the police after being beaten in September, 2017, he told them the information that they knew and they refused to take a police report, refused to conduct any investigation and refused to call him back. But then if we look at the later example, after he got shot just two months later by people who had MS-13 gang tattoos, he reported to the San Pedro Sula prosecutor all the information he knew. And that wasn't just the fact that they had tattoos, Your Honor. That was where he had been, where he had been attacked, what his attackers looked like, what town they were from, what group he believed that they belonged to. And most importantly, the fact that they had MS-13 tattoos all over their hands. None of that information actually made it into the report and the official provided a reason why. Her reason was that she feared that MS-13 would get her at her house if she included that information in the report. That's the quintessential definition. Okay, Mr. Vaughn, let's assume that, look, let me just say outright, you've done an excellent job representing your client and you've presented your client in a situation, I guess, he's in a situation. Our job, though, is to apply the regulations. And so, what we're concerned about here is not the sort of terrible reality of your client's situation, but whether there are facts in the record that would compel a finding that the government is acquiescing in this terrible situation. So, I've read a bunch of cases from our circuit that talk about the government's inability to protect its citizens. As bad as that is, it doesn't amount to acquiescence. So, what we would have to find here is that the facts not only support that view of the situation, that there's been acquiescence, but it compels a finding to the contrary of what the BIA and the IJ found. So, what is your best case that has similar facts here where our court has said, yeah, that is acquiescence, not just an inability to protect, not just, maybe not even police incompetence, police fear, because what you just told me is the police are afraid. Okay. What's the best case that would show that amounts to acquiescence? So, I think I want to answer that in two ways, Your Honor. First, I want to distinguish this from cases that you rightfully point out do not show acquiescence, which are cases in which the police took some meaningful, but ultimately ineffective attempts to assist the person who was in need. An example of that would be Martinez-Montanares, which is Judge Oldham's opinion. And in that case, Judge Oldham noted that the police had actually apprehended the individual in question, held him for 17 days, and then later attempted to prosecute him over the course of five years. And the individual in that case never actually reported his violence to any other police officers. I believe he was a hunter and police officer himself. And when he reported it to the mayor of the town, the mayor of the town told him essentially, I give you carte blanche to take justice in your own hands and take violence in your own hands. That was ineffective police assistance, but it was police work. Real action was taken by the police. No one denies that. The government's not going to come up here and deny that. Our client went to the police and repeatedly asked them for help. And what he was told when he was initially threatened, oh, you haven't given us enough information. What he told them when he was beaten, oh, well, we'll try to look, but I don't think we'll find anything. We'll do an investigation. But they never called him back. They never actually did the investigation. And then finally, when he had gotten shot, all in the course of just several months after he had been threatened, they deliberately falsified the report. They didn't include the critical identifying information. If we analogize this to something happening in the United States where someone is assaulted or victimized by a person and they have tattoos or a mole or some sort of identifying information that could let the police actually do their job and they just refuse to do it, that's different than the police doing something but it not being very effective. Let me ask one question. Go ahead. Was there a finding, any finding by the ALJ or the BIA that Honduras didn't have the money or didn't have the resources or the powers to control the mob? Yes. So the BIA made two findings about that based on what the IJ held. And what they did is they noted, one, police corruption is endemic in Honduras. In many instances, the police and the gangs work together and they form essentially one criminal enterprise. But the BIA also noted that the government of Honduras has attempted to take some action to combat police corruption or ineffectiveness. For example, in May of 2017, they fired around 4,000 suspected corrupt officers. Now, the reason that that doesn't change anything in this case is all of that happened before the violence that my client endured. The May 2017 firing of the police, sure that's nice, but ultimately if you look at the public officials in question, which is the standard that this court has imposed under Garcia versus Holder, the nexus between the public officials in question and what actually happened to the petitioner, you know, he was beaten in September of 2017, months after the firings of these corrupt officers. And then later in December, and lo and behold, the police did nothing. They chose to do nothing and they willfully blinded themselves. My question was, was there a finding that the government was powerless to do anything about it? I believe so, yes. Tell me what it said, what did they say? The BIA said that the government of Honduras was simply, or that the police officers were simply unable to protect our client. I mean, simple as that. Is the, I mean, I'm sorry, you said, I understand the police were terrified of them, but what I'm asking is whether they said that the country, if they had the willpower, could not have controlled it? I believe the finding by the BIA was that the Honduran government makes some effort to combat the gangs, but they're simply ineffective. Yeah, I saw that. Yeah, I guess, and you know, I'll ask you another question, and if we have to add time to the factual findings, are we reviewing predictive factual findings? And what I mean is, okay, given what has happened to this guy, we understand what's happened to this guy, we're going to look into the future and say, well, it's more likely than not that he goes back there and the officials, be they the police, whoever, the officials are going to acquiesce in further victimization. Is that what we're looking at here? I essentially think that's correct, Your Honor. Okay. All right. Well, thank you. As I said, you'll certainly present a vivid picture of what's going on here. Thank you, Your Honor. That's helpful. Now, we're moving on to the government. Mr. Julius, are you there? I am, Your Honor. Can you hear me? Yes, yes, we can. I know that, and thank you. Before your time starts running, I think one of my colleagues, Judge Oldham, has some questions about the government policy on oral arguments, and I certainly am interested in what the government's policy on attending oral arguments in person is. I mean, not simply to put you in a difficult position. I know you're there on the phone, but we just need to understand what the Justice Department's position is going forward on oral arguments. Mr. Julius, good morning. Good morning. I'm looking at the May 17th motion that you filed on behalf of the Department of Justice, and you reference a February 16th, 2021 memorandum, i.e., Department of Justice COVID-19 Workforce Safety Plan 3. Is that the current policy of the Justice Department? To my knowledge, yes. That one has not been updated? Not to my knowledge, no. We haven't received any updated guidance since then. Um, earlier this week, Monday, in fact, one of your colleagues from the Justice Department appeared in a different panel in our court and advised a different panel that the Department of Justice's policy is that if a court denies a motion, and I've seen, I've personally seen several that are materially identical to the one you filed on May 17th, that if we deny that, that the Justice Department's policy is to appear in person at the oral argument. Is that correct? That's my understanding, yes. Can I ask you, why did you not say that in your May 17th motion? I, I suppose I, I, I didn't explicitly state that because it's, it's not explicitly in that executive or in that guidance. Um, I, I quoted the language of, of the guidance itself and included that I was fully vaccinated and that we were required to exhaust the art, the request to appear virtually or via, um, audio or video, um, before the civil division would authorize us to travel on the government's behalf. That's not what you said. What you said was that the Justice Department is limiting travel in accordance with workforce, workforce safety plan three. And I'm not, this is not critical of the particular motion that you filed because as I say, I've seen many that are materially identical, but what the, what the motion says is that the Justice Department is limiting travel in accordance with workforce safety plan three. And according to workforce safety plan three and the motion that you filed, there is a missing fact, which is that if the motion is denied, the Justice Department will appear and you being fully vaccinated, obviously it wouldn't be a risk to you. Speaking only for myself, I would not have agreed to grant this motion if I had known that you would appear safely to you and safely to your colleagues on the other side, if the motion was denied. And so my question, my question to you is why is the Justice Department not advising us in writing what they are advising us orally? I don't know your honor. I can certainly relay the message to our leadership that the court is interested in obtaining that additional piece of information in motions that are filed. Yeah. Thank you, Mr. Julius. Judge Davis, did you have any questions for the government about that? Thank you, Mr. Julius. I do echo judge Oldham's concerns that we just need all the information necessary when we when we get motions from the from the United States. But thank you very much. Yes, I understand. And I will relay that message, your honors. Thank you. Thank you. Thank you. OK, we can. Mr. Julius, you are appearing on behalf of the United States here. And Kim, if you would start the government's time, Mr. Julius, you may proceed. Thank you. Good morning, your honors. And may it please the court, Derek Julius, on behalf of Respondent, the United States Attorney General. At the outset, the government recognizes that this is a highly sympathetic case with difficult facts. Mr. Gutierrez has been the victim of terrible criminal activity in Honduras. But under the law of this circuit regarding government acquiescence, the court should enter an order upholding the final removal order and denying cap protection for three primary reasons. First, as to exhaustion, petitioner failed to exhaust an argument that for cases arising in the Fifth Circuit, the board should apply a specific analysis that's been mandated by the Third and Fourth Circuits, both of which predate petitioner's brief to the board, but were not cited in it. Second, the board's final order otherwise announced and applied to proper review standards for factual findings and legal conclusions in reviewing and upholding the immigration judge's cap protection denial. And third, record evidence does not compel the conclusion that a public official would more likely than not acquiesce to Mr. Gutierrez's torture by gang members in Honduras. Specifically with regard to the exhaustion issue, as the prior colloquy between the court and opposing counsel fleshed out, if you look at their board brief, their standard of review section does certainly appear at page two of the brief. And it's only a few sentences that just regurgitates the typical review standards of clearly erroneous review for factual findings and all other findings de novo, including questions of law. There's absolutely no reference to any kind of mixed question of law or anything specific with regard to the cap analysis in particular. And when you look at the board's decision and when it announces its standard of review that it's applying in this case, it is nearly identical to that boilerplate language that counsel included in their brief. The board's decision on its first page states in total, quote, we review findings of fact, including the determination of credibility made by the immigration judge under the clearly erroneous standard citing the regulation. We review all other issues, including issues of law discretion or judgment under a de novo standard citing that regulation. So, the standards that were announced both by opposing counsel and the board are nearly identical. The only thing that is potentially changed by this is the in which he clarified that even prior to his issuance of matter of RAF, the board had been applying a split standard of review to CAT claims and reviewing the factual findings that are underlying the CAT application for clear error and determining de novo whether the applicant met the legal requirements. And typically, they had been doing so by determining whether the pain and suffering rose to the severity of torture. They reviewed that question de novo, citing matter of ZZO, a prior board decision issued in 2015. The Attorney General simply reiterated that the split standard of review applied to all elements of the CAT protection claim. And because that split standard of review for CAT claims existed prior to matter of RAF, his clarification of the split standard of review was not a new standard. And so, we are, again, referring back to the standard that the board articulated as to applying clear error review for factual determinations, which do include under matter of ZZO, predictive findings of fact about what may or may not occur in the future. Those are reviewed for clear error. And largely, that's what this court is reviewing is what is more likely than not to happen in the future as to Mr. Gutierrez. And the board applied a clear error review to that. Ultimately, in its decision in upholding the denial of CAT protection, the board concluded that he failed to show and meet his burden of proof that he was entitled to CAT protection. Implicit in that ultimate finding is the legal determination that he didn't show that he was more likely than not to be tortured within that legal definition of torture. And the question here largely falls on the question of acquiescence. And so, when you look at the claim itself and what the evidence of record shows, a couple things are important for the court to keep in mind. Referring back to a question that was posed to opposing counsel, CAT protection is always forward looking. The standard of the burden of proof on the applicant is to show that it is more likely than not that he or she will be tortured by or with the instigation or with the acquiescence of a public official. So, past incidents are certainly relevant. And under the regulation, they have to be considered as part of the factors in the overall determination. But unlike in the asylum and statutory withholding context, even where someone, in asylum and withholding, if someone demonstrates past persecution, under the law, they're entitled to a presumption of future persecution. No such presumption applies in the Convention Against Torture context. So, again, while past instances are relevant, they are not necessarily dispositive. The other thing to keep in mind is the nature of his claim. He appears to fear MS-13 writ large, not necessarily discreet members of MS-13. As one of your honors pointed out, in all of the reports and all of his testimony about the various encounters he's had with assailants, there's no assertion that any of these people in the different incidents were the same people each time. For example, he testifies following the 2013-2014 threats that he received for refusing to join the gang or pay the war tax. Several years later, when he's at the bar and attacked with the broken bottle, he says, several men whom he did not recognize. So presumably, these are not the same people who were threatening him years prior. And then in the incident involving the shooting, they were wearing masks. And so, to your honor's point, there's not a whole lot linking these people together. So it's unclear that even if the police had had enough information in any of the to investigate or do anything about these things, that they in any way would have prevented the subsequent events, because there's just no evidence that these are the same people. With regard to the ineffectiveness that Mr. Gutierrez characterizes the police response with, as the agency determined, a lot of what he reported to the police was not that specific. And it's unclear that they would have had sufficient evidence to even launch an investigation. And while it's certainly relevant in the acquiescence analysis as to whether a public official would breach their duty to intervene, there's certainly no duty, no specific duty to intervene and what that means. So in— Can I just ask you one question? Mm-hmm. Did you know that the beatings and the shootings had been preceded by expressed threats by people that the petitioner knew was from MS-13? They wanted to charge a war tax. There was no doubt who was threatening him. And then following those threats, I mean, wouldn't it be logical to assume that the guy who's threatening you is the one who carried those threats out? That's a possible interpretation, Your Honor. But in factual findings, the record has to compel that conclusion. And I just don't think on this record where there's no allegation that they're the same person, and particularly where he specifically stated in testimony that the several men who he encountered at the bar, he didn't recognize them. Well, and I think in one of the incidents, he recognized tattoos that the gang used. I mean, how is someone supposed to be able to identify people with gang members with masks on except tattoos or something of that nature? I agree that it is difficult, Your Honor. But when police don't have enough information to follow up, it's unclear what the police are expected to do here. If you look at the testimony that Mr. Gutierrez provides, most of his assertion that the police took no investigation after he filed reports was due to the fact that he just, to his knowledge, there was no investigation. And so it's not entirely clear from this record, and the record doesn't compel the conclusion that the police were, in fact, doing nothing with these reports. Well, in one incident, the officer who took the report refused to put in it that it was MS-13. In another one, the only advice, I think it was the prosecutor, told him after he was shot, your best play is to leave the country. So that, to me, that's a pretty clear message that they don't intend to investigate. Respectfully, Your Honor, I still don't think that evidence compels the conclusion that in the future that a public official is going to acquiesce. To the point about leaving the country, I would direct Your Honor's attention to Ramirez Mejia, a decision in this case, or a decision in this circuit also involving a Honduran individual who had been experiencing violence by gangs. In that case, no acquiescence was found, even in a situation where, although she alleged that the police told her not to report her brother's murder and to, quote, not get involved with these people, she did not allege the police stated or otherwise indicated that they would permit harm to befall her if she did file a report. Further, in that case, she alleged that officials advised her to leave the country when she disclosed anonymous notes that she had received. So even in cases where police have... What evidence is in the record that would allow Mr. Gutierrez to expect that anything different is going to happen with local law enforcement than happened before? Well, again, I think this just goes to the general nature that this is a claim involving ineffective police and the inability of police to completely eradicate MS-13 violence within Honduras. As the immigration judge noted in some of the country conditions reports show, Honduras is one of the most violent places in the world outside of a war zone. The board itself acknowledges that the Honduran officials are fighting an often losing battle against the gangs. There's no duty that police or officials have to protect an individual in their borders 24-7 from any and all harm. Well, is there any burden for the police to take some action, though? I mean, if you just take no action at all, why isn't that just turning a blind eye to what's going on? Well, in most of these instances, he was able to successfully file a report. And I have case law that where those case reports don't include sufficient information to launch an investigation, the lack of investigation is not in and of itself evidence of acquiescence to harm. It's the same thing that would happen here, Your Honor. If we report crime to the police and we provide them sufficient information to follow up, there may not be much of an investigation. So it's all very circumstances case specific. There is considerable circumstantial evidence that the police were in contact with the gang because on a couple of occasions after he filed a report, when he was beaten and hospitalized, and then he reappeared in some different town, all of a sudden the police knew where he was. You know, they left him for dead, and now they're right on top of him. And kind of the same thing with the shooting. The aunt went down to check on the investigation, and just about before she got home, the MS-13 was there saying, where is Gutierrez? I mean, that certainly would allow an inference. Maybe it doesn't compel an inference, but it would certainly allow an inference that the police were not helping him. They were in cahoots with the gang. Yes, Your Honor. There is certainly evidence in the record that could support Mr. Gutierrez's desired outcome in this case. But I reiterate, Your Honor, the standard that this court must apply is the substantial evidence standard, which requires that the record evidence compel the conclusion. Mr. Gutierrez testified that because MS-13 is so pervasive throughout the that there are children who are following people and reporting that, you know, it's just as likely that he was identified through these means as it is his speculation based purely on the chronology and timing of the events that somehow police officers were alerting gang members to his location. Mr. Gutierrez had moved around a number of times, and so it's not even clear to me from this record that the police to whom he had reported necessarily knew where he was after he moved in these instances. So, again, I just think the record evidence falls short of compelling the conclusion that public officials in Honduras would acquiesce in the future to harm that would befall Mr. Gutierrez. Mr. Julius, I mean, the regulatory language that we're required to apply here says acquiescence. And so my question is, is there a difference in your view in the regulations between acquiescence of a public official and a public official's inability to solve a problem, inability to protect someone, inability to, you know, mount an effective investigation? Is that a distinction that the government supports or that, I guess better yet, that the regulatory language supports? Yes, Your Honor. It is a distinction, and it's an important one because the language that we apply in an asylum and withholding context, statutory withholding, is the government unable or I thought I saw that in a brief somewhere. The unable or unwilling, what context does that come up in? That is asylum and statutory withholding, which is a separate form of relief and protection than what's before the court now. The unable and unwilling standard does not apply to the protection under CAT. CAT is acquiescence, and the inability of police, despite best efforts, to prevent harm is not the same as acquiescence. And so an inability is not synonymous with acquiescence at all. And so the government would like to make a strong distinction between those two concepts. Was there a finding by the ALJ that the government was unable, did not have the I think the closest the board comes to that is on the last page of the board decision. The board acknowledges that, quote, as noted by the immigration judge, Honduras has fought an often losing battle against the gangs that have terrorized its citizens. It is therefore regrettable that the authorities of Honduras may be unable to offer the respondent the protection from gangs that he seeks. Well, you said you said unable after after giving considerable effort or something of that nature. I mean, isn't some effort required? The police in these instances took reports. I don't know. There's certainly nothing in the law that specifies what level of action needs to be taken pursuant to a report, particularly if the report lacks sufficient evidence to investigate. And so while there are certainly instances in the case law where the government had taken more concrete steps, those were specific to those instances and certainly not required by the regulation or the case law to enable to establish that the government in those cases had not acquiesced to harm by private actors. And I would submit that based on the evidence that Mr. Gutierrez had presented, both in terms of his declaration and testimony about interactions with the police, I just don't think that the record evidence is sufficient about the clarity of what he told them, what they said to him, to compel the conclusion that those reports contain sufficient information for the police to investigate. And again, his speculation that no investigation occurred because they didn't affirmatively inform him about it is not to compel the conclusion in any event that they in fact didn't do anything pursuant to those reports. Again, it's to his knowledge there was no investigation. Judge Davis, you had a question. No, he's okay. Please proceed if you have anything else. One final thing before I conclude. I see my time is running up. Even if the court upholds the denial of this cat protection claim, Mr. Gutierrez does have options to There is the option of approaching the field operations director at ICE to request a discretionary grant of deferred action. And certainly if a opposing counsel is interested in pursuing that, if that becomes necessary, I would certainly be happy to facilitate that connection and making that request. But otherwise, for the reasons articulated in the government's brief and presented herein, I would request that the court please deny the petition for review. Thank you. Any other questions? Thank you. Rebuttal? Mr. Mase? Thank you, Your Honor. I plan to make four quick points with this rebuttal. The first is I'd like to come back briefly to Judge Duncan's question about whether a ruling today could deepen or perhaps create a circuit split. We do believe that this is an issue of first impression in the Fifth Circuit, but to clarify, a ruling today that the entire cat claim is subject to a clear error standard of review would create a circuit split. Now, Judge Davis had mentioned moralis moralis and perhaps some language in there that could be read to address this issue already, but we would point out that panels in this circuit, well, first of all, this issue was not squarely raised in that case, and that case did not decide this issue on the proper standard of review. But to the even if it did, even if it did somehow address this issue, panels in this court continue to cite with approval the statement from Thomas v. Texas Department of Criminal Justice, where an opinion fails to address a question squarely, we will not treat it as binding precedent. Now, given that this adverse ruling on the standard of review issue to us would create a circuit split, we think this is an appropriate case for that standard to apply. Second, I'd like to briefly address counsel's argument that the BIA stated the correct standards of review at the outset of its opinion. Moralis moralis itself at page 463 states that we have held that the BIA is not entitled to state the correct legal standard but actually apply an incorrect standard. So we think that whatever the BIA says at the beginning of its opinion is not enough to excuse later legal error. Third, counsel repeated what the government says in its response to our 28J letter that implicit in its conclusion, of the BIA's conclusion, was a finding on this legal question. We are a little confused about the government's position in this case. The respondent's brief appears to suggest that the government correctly applied the clear error standard. Now it sounds as if the government's saying the BIA correctly applied the de novo standard or at least effectively did. But that doesn't address our position that the BIA applied an overly deferential standard of review to the IJ. Lastly, we would point out in response to the BIA's actual finding that Mr. Gutierrez could not safely relocate anywhere in Honduras because of MS-13's sophisticated network of informants. Unless your honor have any further questions that will complete the rebuttal. Thank you counsel. Thank you. The case is submitted. Thank you. The next case we call number 230442.